923 So.2d 486 (2006)
Cedrick JONES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC04-1217.
Supreme Court of Florida.
March 2, 2006.
*487 Carey Haughwout, Public Defender and Margaret Good-Earnest, Assistant Public Defender, Chief, Appellate Division, Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Celia Terenzio, Bureau Chief, and Richard Valuntas, Assistant Attorney Generals, West Palm Beach, FL, for Respondent.
WELLS, J.
We have for review Jones v. State, 870 So.2d 904 (Fla. 4th DCA 2004), which expressly and directly conflicts with the decision of the Third District Court of Appeal in Vargas v. State, 902 So.2d 166 (Fla. 3d DCA 2004).[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
Cedrick Jones was convicted of two counts of battery on a law enforcement officer and one count of resisting arrest without violence. On appeal to the Fourth District Court of Appeal, Jones's appellate counsel filed a motion to relinquish jurisdiction to reconstruct the record because the transcript of the jury selection was not available.[2] The Fourth District granted this motion. During a February 21, 2003, evidentiary hearing in the trial court,[3] Jones's trial counsel, Emmanuel Simon, testified that he could not accurately recall the jury selection proceedings but that he typically makes objections during the voir dire. Jones testified that he recalled his counsel making objections during the voir dire and "saying something like Neo [sic] Slappy when the State was striking a witness or something." However, Jones also conceded that he had difficulty separating what happened in each of his different trials[4] and that he thought that his counsel raised this objection at all three jury selections. Jones testified that he could not remember how many jurors the State struck or their race.
Julie Porter, the assistant state attorney who prosecuted Jones's case, also testified *488 regarding her recollection of the trial. She identified a chart that contained her notes from jury selection in Jones's second trial. The chart indicated that the State used two of six peremptory challenges and the defense used three of six peremptory challenges. The chart also indicated that one prospective juror struck by the State was a crime victim and the other knew law enforcement officers. Porter further testified that she recalled this second jury selection going much quicker than the jury selection for the first trial and did not recall any challenges for cause. She further testified that there might have been objections that occurred during the voir dire that she could not remember.
After the hearing, the trial court entered an order finding that the record could not be reconstructed. On appeal, Jones argued that a new trial must be granted because his appellate counsel was unable to determine if prejudicial error occurred during jury selection. See Jones, 870 So.2d at 904. The Fourth District rejected this argument, citing its decisions in Burgess v. State, 766 So.2d 293 (Fla. 4th DCA 2000), and Velez v. State, 645 So.2d 42 (Fla. 4th DCA 1994), and this Court's decision in Darling v. State, 808 So.2d 145 (Fla.2002). Importantly, the district court determined that Jones conceded that he did not know if any errors actually occurred in the missing portions of the trial transcript. Jones, 870 So.2d at 904. The Fourth District then concluded:
Under existing law by which we are bound, defendant has failed to demonstrate that the missing portions of the transcript are necessary for meaningful review of a specific, identifiable issue in his appeal. It is not enough to say that as a result of the omission we do not know whether any error occurred, and therefore a new trial is required. A new trial would be required under Darling-Burgess-Velez only if Jones could point to a specific decision by the trial judge that he would use to show reversible error.

Id. at 905 (emphasis added).
In Vargas v. State, 902 So.2d 166 (Fla. 3d DCA 2004), the Third District Court of Appeal considered this same issue but reached the opposite conclusion, holding that the defendant was entitled to a new trial despite the fact that he could not identify what error had occurred during the voir dire. In Vargas, the court reporter's notes from the voir dire portion of the defendant's trial were destroyed by fire. 902 So.2d at 166. The Third District held:
Even though [the defendant] has been unable, either at the hearing below or on appeal, to identify even a potential source of reversible error in the conduct of the voir dire and instead relies only on the fact that the possibility that one occurred cannot be totally eliminated in the absence of an appropriate record, we grant the motion and hereby order a new trial.
Id. (footnote omitted).
This Court has previously considered this issue. Initially, it is important to note that we have held that when a defendant alleges that an error occurred at trial, it is an "important principle" that "the defendant bears the burden of demonstrating that an error occurred in the trial court." Goodwin v. State, 751 So.2d 537, 544 (Fla. 1999). This Court has previously applied this principle in the specific context of whether a new trial should be granted on the basis of missing or lost trial transcripts. In Delap v. State, 350 So.2d 462, 463 (Fla.1977), a substantial portion of the transcript from a death penalty trial was missing. The opinion did not indicate whether Delap had asserted that any specific error occurred in the missing portions of the transcripts. We held, however, that *489 because this Court has the responsibility of reviewing the entire record in an appeal from a case in which the death penalty was imposed, the missing transcripts constituted reversible error because they were necessary for a complete review of the case. Id. at 463 n. 1.
We again took up the issue in a case in which the transcript of a first-degree murder trial was "virtually incomprehensible" because of various omissions, misspellings, and other inaccuracies. Johnson v. State, 442 So.2d 193, 195 (Fla.1983). After an evidentiary hearing in respect to the issue, the Court affirmed the trial judge's denial of the motion for a new trial, finding that the defendant was unable to point to any prejudice that resulted from the missing portions of the trial transcript. Id. We stated that "[i]n the absence of some clear allegation of prejudicial inaccuracy we see no worthwhile end to be achieved by remanding for new trial." Id.; see also Ferguson v. Singletary, 632 So.2d 53, 58 (Fla. 1993) ("As to those portions which are still not transcribed, Ferguson points to no specific error which occurred during these time periods. Under these circumstances, we reject this claim.").
In Darling v. State, 808 So.2d 145, 163 (Fla.2002), we said:
Darling argues that there are no records of certain pretrial hearings which occurred in this case, precluding meaningful consideration of Darling's claims. However, Darling has failed to demonstrate what specific prejudice, if any, has been incurred because of the missing transcripts. The missing portion of the transcript has not been shown to be necessary for a complete review of this appeal. Cf. Velez v. State, 645 So.2d 42, 44 (Fla. 4th DCA 1994) (concluding that the appellant was not prejudiced in the review of his conviction and sentence, "[c]onsidering the limited portion of transcript which is missing and the errors alleged to have occurred in the trial court"). Therefore, this claim too lacks merit.
See also Armstrong v. State, 862 So.2d 705, 721 (Fla.2003) (new trial not warranted where defendant "failed to link a meritorious appellate issue to the allegedly missing record and thus cannot establish that he was prejudiced by its absence."); Johnson v. Moore, 837 So.2d 343, 345 (Fla. 2002) (claim for ineffective assistance of appellate counsel based on counsel's failure to ensure a complete record on appeal was denied because defendant failed to show any specific errors that occurred due to failure of counsel on this basis). It is therefore clear that under our precedent, this Court requires that the defendant demonstrate that there is a basis for a claim that the missing transcript would reflect matters which prejudice the defendant.
The evidence presented at the February 21 evidentiary hearing in this case did not demonstrate that any error occurred during the voir dire, and thus there was no identification of any prejudice that resulted because of the missing transcript of the voir dire. The relevant testimony of Jones at the evidentiary hearing was:
Q Do you recall exactly what objections were made before the jury?
A He was saying something like Neo [sic] Slappy when the State was striking a witness or something.
Q Do you recall whether there were sidebar conferences with the Judge during the course of that jury selection?
A They went over by the reporter.
Q They went over by the reporter?
A Yeah.
Q Did the prosecutor make any comments to the jury during jury selection which Mr. Simon objected to?

*490 A Yes.
Q Do you recall, specifically, what those were?
A Not really.
It is apparent that Jones was referring to a Neil-Slappy[5] objection in his testimony. A Neil-Slappy objection alleges that a prospective juror was struck by an opposing party solely because of the juror's race.
Defense counsel could not remember any such challenges being made. At the evidentiary hearing on this issue, the prosecutor from Jones's trial stated that to her recollection, all of the peremptory challenges that the State exercised were directed to white venire members. Moreover, the prosecution was able to cite two non-racially motivated reasons for its two peremptory strikes, and there was no demonstration that these reasons were pretextual. In Melbourne v. State, 679 So.2d 759, 764 (Fla.1996), we addressed the burden placed on a party raising such an objection, holding that the party must "a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike." Then, the proponent of the strike is given the opportunity to put forth a race-neutral explanation for the strike. If the trial court believes that the explanation is not pretextual, it will sustain the strike. The trial court's focus here "is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination." Id. (footnote omitted). When reviewing the trial court's decision on a Neil-Slappy claim, appellate courts are to keep in mind that "the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous." Id. at 764-65. Moreover, "peremptories are presumed to be exercised in a nondiscriminatory manner." Id. at 764. Jones failed to point to any error by the trial court in the voir dire of his trial that would result in a new trial in accord with Melbourne.
The only evidence of the potential error that Jones raises in this appeal is his own vague testimony concerning a Neil-Slappy objection. Immediately following the trial, on August 2, 2001, Jones filed a motion for new trial that set forth numerous bases for relief. Jones's motion did not raise any issues concerning the voir dire in either the motion or at the August 24, 2001, hearing on the motion for a new trial. Jones's present assertion is based on pure conjecture and his memory of possible objections made by his trial counsel, which is unsupported by any of the other evidence presented in the hearing. However, reversible error cannot be predicated on mere conjecture. Spencer v. State, 842 So.2d 52, 63 (Fla.2003); Sullivan v. State, 303 So.2d 632, 635 (Fla.1974).
Based on the above, we approve the decision of the Fourth District Court of Appeal in Jones. We disapprove the decision in Vargas to the extent that the decision of the Third District Court of Appeal conflicts with this opinion.
It is so ordered.
QUINCE, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., dissents with an opinion, in which ANSTEAD and LEWIS, JJ., concur.
PARIENTE, C.J., dissenting.
I dissent. In my view, Jones has been deprived of his right to meaningful appellate *491 review because of the lack of a complete record through no fault of his own. It is conceded that the court reporter was unable to transcribe the jury selection proceedings because the hard drive on her computer "crashed" and she was unable to read her written notes.[6]
The issue in this case pits the defendant's constitutional right to meaningful appellate review against the defendant's burden to demonstrate reversible error. A defendant who has potential grounds for reversal of a criminal conviction should not be penalized when the record of the trial court proceedings is lost in whole or part because of circumstances beyond his or her control. Yet this is the effect of the majority's requirement that the defendant demonstrate a basis for a claim of prejudicial error. The majority's requirement imposes an almost insurmountable burden on the defendant to demonstrate that a reversible error occurred during jury selection proceedings that cannot be reconstructed because of a missing record. This creates too great a danger that convictions will be upheld in cases in which reversible errors have occurred.
Where no transcript of trial is available and reconstruction of the record is impossible, I would require a new trial if the appellant can point with specificity to potential reversible error and the State cannot establish there is no reasonable possibility error occurred. This test is neither the "per se" reversible rule of the Third District nor the "specific, identifiable issue" test of the Fourth District.
In this case, Jones should receive a new trial because his appellate counsel has raised the possibility of reversible error in the exercise of peremptory challenges, the record reflects that both sides used peremptory challenges, the State acknowledged at one point during relinquishment of jurisdiction that objections to peremptory challenges had been made, and Jones himself testified that he recalled that such an objection had been made.
When a criminal defendant appeals a conviction and sentence, the stakes are high: often the defendant's liberty and sometimes whether he or she lives or dies. Moreover, this Court has expressly recognized that a criminal defendant has a constitutional right of appeal under article V, section 4(b) of the Florida Constitution. See Griffis v. State, 759 So.2d 668, 672 (Fla.2000) ("[T]he Florida Constitution. ... contains an express right of appeal."); Amendments to the Fla. Rules of Appellate Procedure, 685 So.2d 773, 774 (Fla. 1996) (construing the language of article V, section 4(b) of the Florida Constitution as a constitutional protection of the right to appeal). A complete record on appeal is indispensable to the realization of this constitutional right. As Justice Goldberg observed in a concurring opinion in Hardy v. United States, 375 U.S. 277, 288, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964),
the most basic and fundamental tool of [an appellate attorney's] profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law.
See also Johnson v. Singletary, 695 So.2d 263, 268 (Fla.1996) (Anstead, J., concurring in conclusion only) (stating that "an unequivocally accurate record of the proceedings is required to enable counsel and the Court to ensure that justice is done").
*492 In several cases arising out of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), this Court has discussed the importance of a complete record to both appointed counsel and the reviewing court. In In re Anders Briefs, 581 So.2d 149 (Fla.1991), in which we held that a minor sentencing error raised by appointed counsel in an Anders brief did not foreclose a pro se brief or independent record review by the appellate court, this Court stated:
The procedure established in Anders and its progeny requires an indigent's appellate counsel to "master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal.... Only after such an evaluation has led counsel to the conclusion that the appeal is `wholly frivolous' is counsel justified in making a motion to withdraw." That motion, however, must be accompanied by an appellate brief referring to every arguable legal point in the record that might support an appeal.

Upon counsel's submission of the motion to withdraw accompanied by an Anders brief, the indigent must be given the opportunity to file a pro se brief. The appellate court then assumes the responsibility of conducting a full and independent review of the record to discover any arguable issues apparent on the face of the record. If the appellate court finds that the record supports any arguable claims, the court must afford the indigent the right to appointed counsel, and it must give the state an opportunity to file a brief on the arguable claims. However, the appellate court is to conduct its full and independent review [of the record] even if the indigent elects not to file a pro se brief.

Id. at 151 (emphasis added) (citations omitted) (quoting McCoy v. Court of Appeals, 486 U.S. 429, 438-39, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988)); see also In re Order of First Dist. Court of Appeal, 556 So.2d 1114, 1117 (Fla.1990) (noting that a careful review of the record serves the interests of the client and alerts the court to points upon which it can focus its independent record review). Requiring the defendant to establish reversible error from an incomplete record may result in grave injustice and has particular potential to frustrate review in Anders cases.
In this case, trial counsel designated transcription of the entire trial proceedings. Jones' appellate public defender, upon learning that the transcript of jury selection was not included in the record, sought to reconstruct the record of jury selection. During the second of three hearings on relinquishment of jurisdiction, an assistant state attorney reported that the prosecutor at trial, who had moved on to private practice, had notes of jury selection and a recollection that during the voir dire missing in this case, both sides exercised peremptory challenges to which the other side objected. According to the State, the trial court resolved the controversy by having both objections cancel each other out, disallowed both peremptories and allowed each of the challenged jurors to sit. However, when the trial prosecutor herself testified at the ensuing reconstruction hearing, she could not specifically recall any objections to peremptory challenges. Jones, the defendant, testified that he recalled his counsel making a "Neo Slappy" objection. Accordingly, appellate counsel has been able to represent only that reversible error in the exercise of peremptory challenges may have occurred under Neil and Slappy during jury selection.
The use of peremptory challenges in a discriminatory manner is an important and difficult issue. In Neil, the Court held *493 that the exercise of a peremptory challenge solely on the basis of race violates the right of both the defendant and the State to trial by an impartial jury under article I, section 16 of the Florida Constitution. See 457 So.2d at 486. Subsequent to the United States Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79, 85, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), holding that the Equal Protection Clause forbids prosecutors from exercising peremptory challenges solely on the basis of race, this Court modified its test for evaluating peremptory challenges in Slappy. This Court has since revisited and refined the test for evaluating Neil-Slappy challenges in several cases. See Dorsey v. State, 868 So.2d 1192, 1196-99 (Fla.2003) (setting forth the history of this Court's decisions on the issue beginning with Neil). Very recently, the United States Supreme Court explained that the "overriding interest in eradicating discrimination from our civic institutions suffers whenever an individual is excluded from making a significant contribution to governance on account of his race." Johnson v. California, 545 U.S. 162, ___, 125 S.Ct. 2410, 2418, 162 L.Ed.2d 129 (2005). This is because, when the choice of jurors is tainted with racial, gender, or ethnic bias,
that overt wrong ... casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial.... That is, the very integrity of the courts is jeopardized when a prosecutor's discrimination invites cynicism respecting the jury's neutrality, and undermines public confidence in adjudication.
Miller-El v. Dretke, 545 U.S. 231, ___ ___, 125 S.Ct. 2317, 2323-24, 162 L.Ed.2d 196 (2005) (citations and quotation marks omitted); see also Batson, 476 U.S. at 87, 106 S.Ct. 1712 ("The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.").
The Fourth District held that Jones was not entitled to a new trial because he "failed to demonstrate that the missing portions of the transcript are necessary for meaningful review of a specific, identifiable issue in his appeal." Jones v. State, 870 So.2d 904, 905 (Fla. 4th DCA 2004). Under comparable circumstances, the Third District has ordered a new trial in several cases, including the conflict decision in Vargas v. State, 902 So.2d 166 (Fla. 3d DCA 2004). See also Rozier v. State, 669 So.2d 353, 353 (Fla. 3d DCA 1996). In Vargas, the court, considering itself bound by Rozier, granted a new trial although the defendant relied only on the fact that the possibility of reversible error during the missing proceedings could not be "totally eliminated." 902 So.2d at 166.
Neither the Third nor the Fourth District's approach adequately balances the defendant's right to complete appellate review with the defendant's burden of demonstrating that an error occurred in the trial court. Cf. Goodwin v. State, 751 So.2d 537, 544 (Fla.1999) (interpreting "section 924.051(7) as a reaffirmation of the important principle that the defendant bears the burden of demonstrating that an error occurred in the trial court, which was preserved by proper objection."); Driver v. State, 46 So.2d 718, 720 (Fla. 1950) ("The judgment entered below comes on appeal to this Court with a presumption of correctness and the burden of showing error by law rests on the appellant."). The standard applied by the Third District could be interpreted as requiring reversal whenever any portion of the trial transcript is missing and cannot be reconstructed regardless of the nature of the *494 omitted proceeding or whether the omitted record is necessary for a complete review. On the other hand, the Fourth District's approach hinges the defendant's right to complete appellate review entirely on the memory of trial counsel and fails to adequately take into consideration the importance of the jury selection process.
Moreover, contrary to the majority's assertion, the Fourth District's overly burdensome approach is not required under our precedent. Although this Court has declined to automatically remand for a new trial when certain limited portions of the record, such as pretrial hearings, bench conferences, or juror strike conferences, could not be reconstructed and the defendant could not establish prejudice,[7] we have never receded from Delap v. State, 350 So.2d 462 (Fla.1977), in which we held that remand is required when the missing portions of the record preclude complete or meaningful appellate review. Thus, while I agree with the majority that some showing that the defendant is prejudiced by the missing record is required, if substantial portions of the trial transcript are missing, it would be an unreasonable, and at times insurmountable, burden to require the defendant to set forth the specific nature of the claims of error.
Rather than adopt either approach used by the district courts of appeal, I would steer a middle course and erect a test that does not create a potentially impossible burden but still requires the defendant to make some showing that a complete review is not possible without the missing transcript, and also gives the State an opportunity to rebut the defendant's assertion. Accordingly, if the defendant can point with specificity to potential reversible error, I would hold that the burden shifts to the State to establish that there is no reasonable possibility that reversible error occurred during that portion of the trial. For other types of claims, we have often resorted to burden shifting to balance the competing interests of the defendant and the State. See, e.g., Dorsey, 868 So.2d at 1199 (stating that when a party objects to the use of a peremptory challenge on racial grounds, the objecting party must establish a prima facie claim for racial discrimination and the burden then shifts to the proponent of the strike to come forward with a race neutral explanation); Wilson v. State, 845 So.2d 142, 156 (Fla.2003) (stating that once a defendant establishes a presumption of vindictiveness in sentencing, the burden then shifts to the State to rebut the presumption); Johnson v. State, 696 So.2d 317, 323 (Fla.1997) (stating that when juror misconduct is alleged by the defendant, the defendant has the burden of establishing a prima facie case of potential prejudice and the burden then shifts to the State to rebut the presumption of prejudice); State v. DiGuilio, 491 So.2d 1129 (Fla.1986) (setting forth the rule that once constitutional error, other than per se reversible error, has been established, the State has the burden of proving that there is no reasonable possibility that the error contributed to the conviction).
In this case, the entire transcript of jury selection is missing and cannot be reconstructed. Appellate counsel has specifically pointed to a possible reversible error in the exercise of peremptory challenges, and the State cannot establish that there is no reasonable possibility that reversible error occurred. The proceedings on relinquishment *495 revealed that peremptory challenges were made by the State, and Jones' trial counsel testified that he generally makes objections during voir dire.[8] In addition, Jones testified that he recalled such an objection and the trial prosecutor admitted there might have been objections that occurred during the voir dire that she could not recall. Accordingly, I would quash the decision of the Fourth District and remand the case for a new trial.
ANSTEAD and LEWIS, JJ., concur.
NOTES
[1] The Third District noted in Vargas that it was bound by its earlier decision on this issue in Rozier v. State, 669 So.2d 353 (Fla. 3d DCA 1996).
[2] The court reporter was unable to transcribe the jury selection proceedings because the hard drive on her computer malfunctioned and she was unable to read her written notes.
[3] A hearing on reconstruction of the jury selection transcript was originally held on May 17, 2002, after which the trial court entered an order finding that voir dire could not be reconstructed. However, the State subsequently filed its own motion to relinquish jurisdiction because the transcript from the May 17 hearing did not list anyone from the State Attorney's Office as being present and no one spoke on behalf of the State at that hearing. The Fourth District granted the motion, and an evidentiary hearing was held on February 21, 2003.
[4] Jones's first trial took place the day before his second trial and ended in a mistrial after the jury was unable to reach a verdict. A previous jury selection occurred before these trials, but the record is not clear as to why this jury selection did not result in a trial.
[5] State v. Neil, 457 So.2d 481 (Fla.1984); State v. Slappy, 522 So.2d 18 (Fla.1988).
[6] I hope that with the statewide move to digital court reporting, losses of critical transcripts in criminal cases will be less likely to occur.
[7] See Armstrong v. State, 862 So.2d 705, 721 (Fla.2003) (jury strike conferences); Darling v. State, 808 So.2d 145 (Fla.2002) (pretrial hearings); Turner v. Dugger, 614 So.2d 1075, 1080 (Fla.1992) (bench conferences).
[8] The inability of Jones' trial counsel to specifically recall any Neil-Slappy challenges being made is not surprising. Because a potential juror cannot be excluded from a jury based on race, ethnicity, or gender, objections to the use of peremptory challenges have become routine for both the prosecution and defense, and therefore individual proceedings involving these issues may not stand out in trial counsel's memory.