SHEPHERD, J.
Defendant, Jason Jerrod Bodie, appeals his convictions on three counts of attempted murder and one count of unlawful possession of a firearm. He argues a new trial is warranted because, through no fault of his, a complete transcript of the proceedings is not available. After a reconstruction hearing held pursuant to Florida Rule of Appellate Procedure 9.200(b)(4), all missing portions of the transcript were agreed to or settled upon by the parties except for the content of the State’s thirty minute closing argument.[1] Defendant, based upon personal recollection, asserts reversal is required as a re-suit of two instances of alleged prosecuto-rial misconduct during the State’s closing argument. Although we register our skepticism concerning the veracity of his assertions, we conclude the missing transcript is not necessary for a full review of the alleged error and affirm the convictions.
I. FACTUAL AND PROCEDURAL HISTORY
This case involves the attempted murders of Teddric Hughes and his cousin, Kareem Terry. Hughes had an apartment in Homestead. In September 2002, an unknown person fired shots into the apartment when Hughes was not there. A man in the neighborhood called “Nut,” initially arrested for the shooting but released, blamed defendant for the crime. According to the State’s theory of the case, defendant sought to retaliate against Hughes because he believed Hughes was spreading the accusation in the neighborhood.
At trial, Hughes testified that a few weeks after the apartment incident, defendant approached Hughes at a local nightclub and asked Hughes if he was looking for him. After exchanging words, the two exited the club and fought briefly in the parking lot. Defendant was in the company of co-defendants Nicholas Flavius and Kenneth Styles; Hughes was with a friend, Montrel Thompson.
Later that evening, Hughes and Thompson went to Hughes’ grandmother’s house and told Terry about the nightclub incident. Shortly thereafter, a beige car drove by and a passenger fired a shot into the air. Hughes, who at the time was standing outside the house near the sidewalk, identified Flavius as the driver, defendant as the front passenger, and Styles as the rear passenger. Hughes ran into *1218 the house and summoned the police. The police responded, and after a brief interview with Hughes, suggested he seek refuge at another location.
Following police advice, Hughes and Thompson departed the grandmother’s house in separate vehicles with Thompson in the lead. Unfortunately, the beige car lay in wait at an intersection just a half block away. As Hughes made a left turn, two of the occupants accosted Hughes’ vehicle with gunfire, disabling the vehicle and wounding Hughes. As Hughes dove from his car, he observed both passengers hanging out the windows of the beige car. Hughes returned to his grandmother’s on foot, awakened Terry, and asked Terry to drive him to the hospital. As Terry backed out of his driveway, the beige car emerged again and sprayed Terry’s vehicle with gunfire. None of the fifteen shots fired hit Terry. Hughes suffered additional wounds. AK 47 bullet casings were found at both shooting scenes.
Defendant, Flavius, and Styles were arrested for the crimes. Defendant gave a taped confession, which was played for the jury. On the tape, defendant acknowledged the nightclub altercation, retrieving an assault rifle, pursuing Hughes, and squeezing off between twenty and twenty-five rounds from a rifle at Hughes and Terry. He confessed to disposing of the rifle into a dumpster. When asked what he was trying to accomplish, defendant replied, “Nothing — like I was saying man — it was — I wasn’t — I wasn’t thinking I was speeding man and I just got caught up — I let the incident and the spur of the moment take advantage of everything.” Terry’s and Thompson’s testimony confirmed defendant’s aggression on Hughes and his cousin. After a six-day trial, defendant was convicted of three counts of attempted murder, one count of unlawful possession of a firearm, and sentenced to life in prison.
On appeal, it was discovered that substantial portions of the trial transcript of the last day of trial were missing. We relinquished jurisdiction for the parties to attempt to reconstruct the record. Fla. R.App. P. 9.200(b)(4). At the reconstruction hearing, the parties settled upon, and the court approved, stipulations by the parties relating to six of seven missing segments.[2] However, they could not agree as to what transpired during the State closing argument.
In anticipation of the hearing, the State filed a three-page statement of its closing, prepared with the assistance of the lead prosecutor who had tried the case. The statement concluded by reciting that the State “does not recall any objections being made” to the State’s closing, “and there were no motions for mistrial.” Defendant’s appellate counsel traversed the State’s statement, taking issue only with that single assertion by the State. The response stated:
Appellant maintains that there were objections made during the closing. The prosecutor’s remarks regarding the AK 47 as a ‘military weapon designed for killing people’ were objected to. Also, [defense trial counsel] recalls making an objection to a comment by the prosecutor that there was no evidence showing that Mr. Bodie was not the shooter, and that the only evidence was his own confession.
At the commencement of the hearing, defendant’s appellate counsel swiftly im~ *1219 peached her own traverse by tendering a previously executed affidavit of defense trial counsel that “he had no recollection of any of the missing proceedings in this case.” Defense trial counsel, standing with defendant’s appellate counsel at the hearing, reaffirmed the truth of the affidavit, and together the two of them acknowledged that the statements in the response were based on “arguments raised by the defendant.” Upon further probing, it became clear that the assertions made by defendant’s appellate counsel in the traverse were based upon notes the defendant made after he reviewed, eighteen months after the trial concluded, the few salvaged lines of the State’s closing argument, the State’s statement of closing, and the defense closing. The defendant made no contemporaneous notes of the trial proceedings. Nor did defense trial counsel assert any instances of prosecutorial misconduct in his motion for new trial, timely filed just ten days after the verdict of the jury.[3] Finally, neither the prosecution,[4] defense trial counsel, nor the trial judge[5] had any recollection of the defendant’s asserted error.
In sum, the two assertions of prosecuto-rial misconduct urged by the defendant in this case as grounds for a new trial are the product of his own recollection, unsupported by contemporaneous notes taken by him, first asserted eighteen months after the trial of the case, and coincidentally found in the only portion of the record in which there has not been reconstruction agreement. Defendant alleges no other reversible error as a basis for a new trial. Defendant, while present, did not affirm under oath the representations made in the traverse.
II. ANALYSIS
Defendant argues a new trial is required where the transcript of the State’s closing is unavailable, the defense identified improper argument made during closing, the parties could not agree as to what transpired, and the trial court had no independent recollection of the closing argument. He places primary emphasis on his assertion that the prosecutor improperly argued “that there was no evidence that Mr. Bodie was not the shooter, and the only evidence was his own confession.” See Gore v. State, 719 So.2d 1197, 1200 (Fla.1998)(“[I]t is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.”). He selects as his primary legal authority for this argument, Jones v. State, *1220 780 So.2d 218 (Fla. 2d DCA 2001) (Jones I).
In Jones I, Richard Jones was convicted for resisting arrest without violence and drug possession after a one-day jury trial. The bench conferences recorded inaudible, the defense closing arguments were incomplete, and the State’s closing argument was completely missing. Id. The trial court concluded it was impossible to reconstruct the missing portions of the trial record. Id. On appeal, Jones’s appellate counsel argued that especially because improper closing argument, standing alone, can be grounds for reversal, see e.g., Palazon v. State, 711 So.2d 1176 (Fla. 2d DCA 1998), the absence of the trial transcript “has precluded appellate counsel from evaluating this portion of the trial for error.” Jones I, 780 So.2d at 219. No actual error was asserted. Id. The Second District agreed that mere absence of the trial transcript compelled reversal:
In this case, we conclude that the State’s closing argument is necessary, and its omission compels us to grant a new trial.... Jones is prejudiced by the incomplete transcript because his appellate attorney is incapable of reviewing the State’s closing argument to determine the presence or absence of reversible error.
Id. (internal citations omitted); see also Gervin v. State, 920 So.2d 733 (Fla. 5th DCA 2006)(affording the defendant a new trial where his motion for mistrial and associated testimony were unavailable).
For years, our case law was consistent with Jones I. For example, in Vargas v. State, 902 So.2d 166 (Fla. 3d DCA 2004), quashed by State v. Vargas, 937 So.2d 663 (Fla.2006), remanded to Vargas v. State, 31 Fla. L. Weekly D3134, — So.2d -, 2006 WL 3615192 (Fla. 3d DCA Dec. 13, 2006), expressly intoning Jones I, and in reliance upon our own precedent, see Rozier v. State, 669 So.2d 353 (Fla. 3d DCA 1996), we reversed a defendant’s conviction based upon the unavailability of a transcript of the voir dire of his trial “[ejven though [the defendant] has been unable, either at the [reconstruction] hearing below or on appeal, to identify even a potential source of reversible error in the conduct of the voir dire and instead relies only on the fact that the possibility that one occurred cannot be totally eliminated in the absence of an appropriate record.” Vargas, 902 So.2d at 166. In this same era, in Blasco v. State, 680 So.2d 1052, 1053 (Fla. 3d DCA 1996), we reversed a guilty verdict for a new trial where the State’s rebuttal testimony was not available for review by appellate counsel for error. Again, the defendant had not asserted any specific reversible error. Id. at 1057 (Green, J., dissenting). The Blasco majority reasoned that the mere absence of the rebuttal was sufficient, stating:
Unfortunately, because the notes are lost, and because the trial court’s valiant attempt at reconstruction in the face of vague memories still leaves the record unresolved, we do not know, and are not capable of knowing, whether any reversible error was committed during rebuttal. For this reason we reverse the conviction and remand this matter for a new trial.
Id. at 1053.
However, last year in Jones v. State, 923 So.2d 486, 489 (Fla.2006) (Jones II), the Florida Supreme Court rejected the line of authority that had developed in this and other courts of appeal in Florida that reversals of a conviction were nearly ipso facto required if, through no fault of the defendant, the transcript of a criminal trial was unavailable for review to appellate counsel. Id. at 488, 490 (disapproving Vargas, 902 So.2d at 166)(citing Rozier, 669 So.2d at 353). Instead, approving the *1221 reasoning of the case there under review, see Jones v. State, 870 So.2d 904, 905 (Fla. 4th DCA 2004) (Jones III), the supreme court reaffirmed its own earlier authority that to prevail on a claim for a new trial based upon the unavailability of a transcript, “the defendant must demonstrate that there is a basis for a claim that the missing transcript would reflect matters which prejudice the defendant.” Jones II, 923 So.2d at 489. Applying this rule to the facts of that case, the supreme court in Jones II held that the defendant’s personal averment of non-specific Neil-Slappy[6] error was insufficient to require a new trial based upon unavailability of the record of voir dire. According to the court, “Jones’s present assertion [was] based on pure conjecture.” Id. at 490. His conviction was affirmed.
Although left to our own devices, we might inquire whether defendant’s un-sworn assertions of error in this case likewise are sufficiently averred, supported, or credible to “demonstrate a basis for a claim” under the supreme court’s recent pronouncement, defendant nevertheless articulates through counsel two purportedly preserved, specific grounds of error in the State’s final argument, that the prosecutor referred to the AK 47 defendant used to commit the crimes as “a military weapon designed for killing people” and “that there was no evidence showing that Mr. Bodie was not the shooter, and that the only evidence was his own confession.” We treat each assertion on the merits.
As to the former purported remark, we find the assertion of error frivolous. The statement, if made, would have been well within the bounds of a fair final argument. E.g., State v. Comesana, 904 So.2d 462, 464 (Fla. 3d DCA 2005)(“The State’s characterization of [defendant’s] witnesses drew no objection because their testimony changed so many times and was so riddled with inconsistencies that, as the prosecutor maintained, his observations were fair comment and permissible in the context of this trial.”). Moreover, the transcript of the opening statement contains the same remark; and the State’s ballistic expert, while demonstratively displaying and explaining the operation and use of an AK 47 weapon to the jury, told the jury the AK 47 was developed as “the military weapon of the Communist Block Nations designed in 1947.” No objections are recorded in the transcripts at either of these entries.
As to the latter remark, we conclude defendant cannot meet the prejudice prong of the supreme court’s Jones II test. Defendant confessed to the crimes. His participation in the shooting spree is supported both by physical evidence and confirmatory testimony of three other persons gathered into the melee. A burden shifting remark, even if made, does not compel automatic reversal. Spencer v. State, 842 So.2d 52, 76 (Fla.2003)(“[E]rro-neous comments do not require an automatic reversal, but instead should be evaluated according to the harmless error rule.”)(internal quotation omitted); State v. Murray, 443 So.2d 955, 956 (Fla.1984)(“[P]rosecutorial error alone does not warrant automatic reversal of a conviction unless the errors are so basic to a fair trial that they can never be treated as harmless.”). As the Florida Supreme Court said not so long ago, “It makes no sense to order a new trial, because of nonfundamental error committed at trial, when we know beyond a reasonable doubt that the defendant will be convicted again.” State v. Marshall, 476 So.2d 150, 153 (Fla.1985). That is the case here.
CONCLUSION
We reject defendant’s contention that the missing portion of the trial transcript *1222 in this case is necessary to a complete review of his conviction.
Even assuming defendant established “a basis for a claim” within the meaning of the supreme court’s recent pronouncement in Jones II, he fails in his obligation to reflect a matter which caused him prejudice. We affirm the conviction and sentence in this case.
Affirmed.

. The record reflects defendant had both the initial closing argument and the rebuttal.

. The other deficiencies in the trial transcript included the absence of the transcript of the testimony of a state police witness, the defense rebuttal closing, the reading of the br-structions to the jury, the trial record as it pertained to questions during deliberations, the reading of the verdict, and the separate trial on the firearm possession charge.

. The grounds asserted in support of a new trial were: (1) the verdict was contrary to the weight of the evidence; (2) the jury’s swift verdict regarding the charge of unlawful possession of a firearm or weapon suggested the jury did not sufficiently deliberate; (3) hearsay statements were introduced; (4) a rifle was introduced for demonstrative purposes; (5) photographs of untreated wounds were introduced, which defendant argued engendered jury sympathy; and (6) the jury failed to grant acquittal as to one of the two counts of attempted murder

. Two assistant state attorneys were assigned to try defendant. Both attended the reconstruction hearing. The junior prosecutor represented to the court during the course of the hearing his recollection of post-trial discussions of the case that occurred between him and lead counsel in which they observed that no objections occurred during the State closing and the "rarity” of the occurrence.

.Although the trial judge had no recollection of the closing argument, he stated that if a burden shifting argument of the type alleged by and asserted by defendant had occurred relating to whether defendant was the shooter, he immediately would have interrupted the argument even in the absence of an objection by defense counsel and given a curative instruction.

. See State v. Slappy, 522 So.2d 18 (Fla.1988); State v. Neil, 457 So.2d 481 (Fla.1984).