WELLS, Chief Judge.
Defendant Juan Carlos Perez-Sovias appeals from his convictions for aggravated battery and petit theft, raising a number of arguments regarding his conviction and sentence. Although we conclude that none of these arguments has merit, we nonetheless write to address concerns raised by Perez-Sovias’ argument that the court below erred when it engaged in untranslated conversations in Spanish with a number of prospective jurors, thereby depriving him of a transcript of a portion of the proceedings and ultimately a record to bring to this court.
Perez-Sovias was charged with aggravated battery, petit theft, and three counts of battery on a law enforcement officer stemming from an altercation between Perez-Sovias and his employer. Prior to jury selection, a qualified interpreter was sworn to translate all portions of the proceedings from English into Spanish for Perez-Sovias’ benefit. The interpreter was also available to translate any portion of the proceedings which might occur in *329 Spanish into English so as to facilitate creation of a record.
Shortly after the interpreter was sworn, a panel of prospective jurors was brought into the courtroom. As voir dire commenced, the trial judge asked the panel whether any panel member had any language difficulties that would prevent jury service. The trial judge then began to question, in Spanish, five prospective jury members who had raised their hands in response to his initial question. Although a certified interpreter was present at the time, he was not called upon to translate the exchange between the judge and these five prospective jurors. The trial judge instead summarized in English what he represented he had said in Spanish to these prospective jurors and what he interpreted them to have responded to him in Spanish:
THE COURT: ... Anybody have language difficulties that would prevent them from being a juror for us here today? We have a hand in the back here and it is Mr. Perez. (Judge speaks in Spanish to Juror.)
THE JUROR: Perez.
THE COURT: I’ve been speaking to him in Spanish for the record and he says he speaks very little English. How much have you understood so far?
THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: He responded in Spanish for the record. (Judge speaks in Spanish to Judge, [sic])
THE JUROR: Driver, truck driver.
THE COURT: (Judge speaks in Spanish to Juror.) He says he’s a truck driver; he’s been in the country 15 years. (Judge speaks in Spanish to Juror.) Says he doesn’t have to speak English for his job. Okay. We have another hand in the back. It is Lopez.
THE JUROR: Martha Lopez.
THE COURT: Martha, do you speak English?
[THE JUROR]: (Juror speaks in Spanish to Judge.)
THE COURT: She says she doesn’t understand what I’m saying but— (Judge speaks in Spanish to juror.)
THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: She works for a dentist and — (Judge speaks in Spanish to Juror.) She says her contact with the clientele is just to say hello and so forth, not in depth conversations. I told her I would speak to her later. Anybody else with difficulties? We have a hand and it’s....
[[Image here]]
THE COURT: Alonso?
THE JUROR: Alonso, yes.
THE COURT: Do you speak English, ma’am?
THE JUROR: Little bit.
THE COURT: What do you do for a living? Where do you work?
THE JUROR: The thrift store.
THE COURT: Where?
THE JUROR: The thrift store.
THE COURT: And how much have you understood so far?
THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: I asked her how much she understood, and she asked me in Spanish to ask her in Spanish. (Judge speaks in Spanish to Judge, [sic])
THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: She says she speaks more English than she understands and if you speak it too fast, the English that is, she understands even less. And I have been accused of talking too fast.
*330 THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: All right. Anybody else with language difficulties? We have Mr. Ramos, right?
THE JUROR: Yes.
THE COURT: Mr. Ramos, how much have you understood so far? (Judge Speaks in Spanish to Judge [sic].)
THE JUROR: (Juror Speaks in Spanish to Judge.)
THE COURT: I asked him how much he’s understood; he said very little. (Judge speaks in Spanish to Juror.)
THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: He’s a Spanish Telemarketer.
THE JUROR: Yes.
THE COURT: (Judge speaks in Spanish to Juror.)
The JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: He’s been here 25 years. Any other Spanish — any other language? Mr. Quintero, all right, how much have you understood?
THE JUROR: How much.
THE COURT: How much? (Judge speaks in Spanish to Judge, [sic])
THE JUROR: (Juror speaks in Spanish to Judge.)
THE JUDGE: Where do you work? What’s your job?
THE JUROR: (Juror speaks in Spanish to Judge.)
THE JUDGE: What do you do there?
THE JUROR: [ QJuror speaks in Spanish to Judge.)
THE COURT: Chauffeur for Cadillac. (Judge speaks in Spanish to Juror.)
THE JUROR: (Juror speaks in Spanish to Judge.)
THE COURT: He’s understood — I said 50 percent; he said probably less. Anybody else Spanish difficulties? Speak now or forever hold your peace on that issue. Let’s move on-
Following these exchanges, the trial judge indicated that he was going to excuse all five of these prospective jurors, but asked the five individuals with language difficulties to remain in the courtroom while the court took a recess. But before the other prospective jurors left the courtroom, the judge spoke again in Spanish to the entire panel. On this occasion, the judge gave no indication in English as to what was said:
THE COURT: All right. Ladies and gentlemen, we’re going to take a short break, and I’m going to name a few people that I want to remain with us; Number 16, Ramos; number 18, Quinte-ro; number 23, Alonso; number 36, Lopez; and 34, Perez.
(Judge speaks in Spanish to Jurors.) Everyone else, we’re going to have a short recess....
After the panel left, the judge spoke in Spanish to the five remaining prospective jurors:
(Thereupon, the prospective jury panel departed from the courtroom, after which the proceedings continued as follows:)
THE COURT: Okay. Please be seated. (Judge speaks in Spanish to Jurors.)
THE BAILIFF: All rise for the jurors. Follow me.
THE JUROR: (Juror speaks in Spanish to Judge.)
(Juror departed the courtroom.)
Following this exchange, the court took a short recess.
When the panel returned, the judge commented that “[s]ome of [the] Spanish speakers were released.” Then as jury selection proceeded, the trial court made reference to the fact that prospective juror *331 Ramos was “gone,” with the judge saying, “He’s [a] Spanish speaker.” With regard to another prospective juror, the judge stated, ‘We’ve already gotten rid of him. He’s a Spanish speaker.” A jury ultimately was empanelled without objection to any of this. Trial commenced the following day.
At the conclusion of the trial, the jury found Perez-Sovias guilty of aggravated battery and petit theft. Upon determining him eligible for enhanced sentencing, the court sentenced Perez-Sovias as a violent career criminal and a prison releasee reof-fender to life imprisonment on the aggravated battery count and to sixty days on the petit theft count.
Perez-Sovias does not complain here that the trial court erred in communicating with the jurors in Spanish. Rather, he claims fundamental error as a consequence of the judge’s actions because the court reporter was unable to record all portions of the proceedings and because the court reporter failed to bring her inability to do so to the attention of the court:
[T]he court reporter had an obligation to record all proceedings, including those portions conducted in Spanish. If she did not have the ability to do so, she had an obligation to bring that inability to the attention of the judge and the parties so that alternative arrangements could have been made — perhaps the substitution of a court reporter who spoke Spanish, perhaps the use of [an] interpreter, perhaps an agreement that the judge could interpret, perhaps the taping of the conversations for future transcription, perhaps some other approach.
See Fla. R. Jud. Admin. 2.535(c) (“When trial proceedings are being reported, no part of the proceedings shall be omitted unless all parties agree to do so and the court approves the agreement.”); see also Springer v. State, 429 So.2d 808, 808 (Fla. 4th DCA 1988) (confirming that it is “incumbent upon the reporter to inform the court of his inability to transcribe the tapes at the time the tapes [are] played.”).
While voir dire is a critical stage of a trial and should be transcribed, we cannot agree that the failure to transcribe the entire voir dire in this case was error that reached down into the validity of the trial itself, so as to mandate reversal without further inquiry. See Gomez v. U.S., 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (confirming that voir dire is “a critical stage of the criminal proceeding”); Tanzi v. State, 94 So.3d 482 (Fla.2012) (“A fundamental error is error that ‘reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ Rodriguez v. State, 919 So.2d 1252, 1282 (Fla.2005) (quoting Brown v. State, 124 So.2d 481 (Fla.1960)).”); Reed v. State, 837 So.2d 366, 369-70 (Fla.2002) (confirming that while not all harmful error is fundamental, because fundamental error by its nature is harmful, it is not subject to a harmless error review); see also § 924.051(3), Fla. Stat. (2012) (providing that fundamental error need not be preserved for review by a contemporaneous objection). As explained in Jones v. State, 923 So.2d 486, 487-90 (Fla.2006), the fact that some or all of a voir dire is not transcribed does not alone mandate reversal. There, as here, a claim of error was predicated on a missing voir dire transcript. But, unlike here, the defendant in Jones claimed prejudice because he was unable to assert an error in the manner in which the jury was selected (that is, a purported Neil-Slappy[1] error). Id. at 490.
Rather than conclude that the failure to transcribe this important portion of the *332 trial and preserve a record for review constituted fundamental error (and therefore permitting no harmless error review), the Florida Supreme Court found (in what can only be viewed as a harmless error analysis) that because the defendant’s Neil-Slappy claim was based on no more than “pure conjecture,” id., the lack of a voir dire transcript did not mandate reversal. Id.; see also Armstrong v. State, 862 So.2d 705, 721 (Fla.2003) (concluding that a new trial was not warranted where the defendant “failed to link a meritorious appellate issue to the allegedly missing record and thus cannot establish that he was prejudiced by its absence”); Darling v. State, 808 So.2d 145, 163 (Fla.2002) (finding unpersuasive Darling’s argument that because there was no record of the pretrial hearings that occurred in the case, meaningful review was precluded, requiring a new trial, and holding that because Darling did not demonstrate what specific prejudice, if any, he incurred because of the missing transcript, the missing transcript was not shown to be necessary for meaningful review); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (“As to those portions which are still not transcribed, Ferguson points to no specific error which occurred during these time periods. Under these circumstances, we reject this claim.”); Louisias v. State, 985 So.2d 1181, 1182 (Fla. 3d DCA 2008) (“The failure to obtain the trial record, even when the failure to do so is through no fault of the defendant, does not, however, require that a new trial be granted.”).[2]
In this case, no claim of prejudice, specific or otherwise, is made or demonstrated as a consequence of the trial court’s actions. Thus, we conclude that the fact that the transcript of the voir dire in this case is incomplete because no English translation was made of portions of it does not mandate reversal. See State v. Smith, 352 N.C. 531, 532 S.E.2d 773, 784 (2000) (where the North Carolina Supreme Court found no reversible error in allowing a prosecutor to ask, and a potential juror to answer, two preliminary questions in Spanish); see also Sullivan v. State, 303 So.2d 632, 635 (Fla.1974) (“Reversible error cannot be predicated on conjecture.”); accord Ford v. Wainwright, 451 So.2d 471, 474 (Fla.1984); Phelps v. State, 353 So.2d 1221, 1222 (Fla. 3d DCA 1977) (“[Reversible error cannot be predicated upon mere conjecture.”).
That is not to say that what happened below was appropriate. It was not.
Article II, section 9 of the Florida Constitution provides that “English is the official language of the State of Florida.” Section 90.606 of the Florida Statutes acknowledges this mandate, requiring use of interpreters and translators where a witness cannot speak or understand English:
When a judge determines that a witness cannot hear or understand the English language, or cannot express himself or herself in English sufficiently to be understood, an interpreter who is duly qualified to interpret for the witness shall be sworn to do so.
§ 90.606(1)(a), Fla. Stat. (2012).
Florida Rule of Judicial Administration 2.560 further provides for the appointment *333 of interpreters for “non-English-speaking persons” in criminal, juvenile delinquency and “all other proceedings in which a non-English-speaking person is a litigant.”[3] Fla. R. Jud. Admin. 2.560(a)-(b). Section 90.606 also provides that “[a] person who serves in the role of interpreter or translator in any action or proceeding is subject to all the provisions of this chapter relating to witnesses.” § 90.606(2), Fla. Stat. (2012). The trial judge in this case was neither qualified to act as an interpreter in a criminal case nor competent to testify. See § 90.607(1)(a), Fla. Stat. (2012) (“Except as provided in paragraph (b), the judge presiding at the trial of an action is not competent to testify as a witness in that trial. An objection is not necessary to preserve the point.”). Thus, while the trial judge in this case certainly had the right to question potential jurors, see Fla. R.Crim. P. Rule 3.300(b), he should have done so in English, and used an interpreter to translate his questions into Spanish as provided in the rules outlined above.[4] He also should have used the official interpreter to translate the prospective jurors’ responses in Spanish into English. See Monica & Vincent Williams v. Samari Lake E. Condo. Ass’n, No. 02-3002, 2003 WL 2009103, at *22 n. 10 (Fla.Div.Admin.Hear. Apr. 29, 2003) (“Pursuant to Article II, Section 9, of the Florida Constitution, ‘English is the official language of the State of Florida.’ Accordingly, all official proceedings before Judge Chavies must be in English (although there is no prohibition against the use of interpreter services for those unable to understand or communicate in English).”). Had he done so, Perez-Sovias would now have a transcript, making the speculation which forms the basis of Perez-Sovias’ claim superflu *334 ous. While we conclude that no harmful error has been demonstrated as a consequence of the lapses which occurred below, we caution that the procedure utilized in this case should not be repeated in the future.
Accordingly, the order under review is affirmed.

. "A Neil-Slappy objection alleges that a prospective juror was struck by an opposing par *332 ty solely because of the juror’s race.” Jones, 923 So.2d at 490; see State v. Slappy, 522 So.2d 18 (Fla.1988); State v. Neil, 457 So.2d 481 (Fla.1984).

. But see Brown v. State, 65 So.3d 629, 632 (Fla. 4th DCA 2011) ("The absence of a voir dire transcript [in Jones ] differs from the missing record in this case because in Jones the defendant and his lawyer were present during the voir dire, so the defense had the ability to specify how the absence of a transcript harmed the appeal. Here, the defense was excluded from the in camera hearing, so it had no way of knowing what occurred.”).

. This Rule also provides for the qualifications of interpreters and for the specific procedure to be followed when a non-qualified interpreter is used — a procedure not followed in this case:
(e) Qualifications of Interpreter.
(1) Appointment of Interpreters when Certified or Duly Qualified Interpreters Are Available. Whenever possible, a certified or duly qualified interpreter, as defined in the Rules for Certification and Regulation of Court Interpreters, shall be appointed.
(2) Appointment of Interpreters when Certified or Duly Qualified Interpreters Are Unavailable. If, after diligent search, a certified or duly qualified interpreter is not available, an interpreter who is neither certified nor duly qualified may be appointed if the judge or hearing officer presiding over the proceeding finds that:
(A) good cause exists for the appointment of an interpreter who is neither certified nor duly qualified, such as the prevention of burdensome delay, the request or consent of the non-English-speaking person, or other unusual circumstance; and
(B) the proposed interpreter is competent to interpret in the proceedings.
(3) On-the-Record Objections or Waivers in Criminal and Juvenile Delinquency Proceedings. In any criminal or juvenile delinquency proceeding in which the interpreter is neither certified nor duly qualified, the court shall advise the accused, on the record, that the proposed interpreter is not certified or duly qualified pursuant to the Rules for Certification and Regulation of Court Interpreters. The accused’s objection to the appointment of a proposed interpreter, or the accused’s waiver of the appointment of a certified or duly qualified interpreter, shall also be on the record.
Fla. R. Jud. Admin. 2.560(e)(1)-(3).

. In the past, we have concluded that even instruments attached to pleadings and motions submitted to the court must be in English. See Rodriguez v. State, 45 So.3d 938, 939 (Fla. 3d DCA 2010) (concluding that a defendant's post-conviction motion was procedurally deficient because he "submitted his motion partially written in Spanish, without an English translation”); Diaz v. Bell Micro-Products-Future Tech, Inc., 43 So.3d 138, 140 (Fla. 3d DCA 2010) (concluding that attachments to the complaint should be translated into English because pleadings are required to be in English); 40 Fla. Jur.2d Pleadings § 13 (2012) (stating that “pleadings are required to be in the English language”).