[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12532
_____

D.C. Docket No. 1:12-cv-21916-JAL

MICHAEL BUSH,

Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 25, 2018)

Before TJOFLAT and MARCUS, Circuit Judges, and STEELE,[*] District Judge.

TJOFLAT, Circuit Judge:

--------------------

[*] Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

Michael Bush is a Florida prison inmate serving sentences for burglary of an occupied building, grand theft, and resisting an officer without violence. After exhausting his state-court remedies on direct appeal and collateral attack, he petitioned the United States District Court for the Southern District of Florida for a writ of habeas corpus vacating his convictions pursuant to 28 U.S.C. § 2254. The Court denied the writ and a judge of this Court issued a Certificate of Appealability ("COA").[1] The COA posed the following question: whether Bush was denied "due process or access to the courts" because he was unable—due to the unavailability of a transcript of his criminal trial—to prove in collaterally attacking his convictions that his trial attorneys rendered ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. *See generally Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The answer to this question depends upon whether the Florida Third District Court of Appeal's ("DCA") decision affirming the collateral-attack court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). We conclude that the answer is no and therefore affirm the District Court's denial of the writ.

---

[1] *See* 28 U.S.C. § 2253(c).

2

I.

A.

The crimes in this case occurred in the night of October 7–8, 2003, in Miami Shores, a village in Miami-Dade County, Florida. Around 2:30am on October 8, Lori Willenberg briefly observed a man outside of her house. Minutes later, she saw the man running swiftly near the back of her house. She called the police and described the man as a black male wearing a red shirt and black pants. An officer responded and, upon his arrival, spotted a man nearby matching that description. He was riding a bicycle. After the man noticed the officer, he jumped off of the bicycle, discarded a bag and a leaf blower, and then ran. The officer followed him but ceased the pursuit soon after the man jumped over a chain-link fence. A k-9 unit was dispatched and at around 3:30am Michael Bush was found on the roof of a house in the area and taken into custody.

On October 29, 2003, the State Attorney for Miami-Dade County charged Bush by information with burglary of an occupied dwelling, grand theft, and resisting an officer without violence. He was declared indigent, and the Circuit Court of Miami-Dade County appointed public defenders Lindsey Glazer and Gregg Toung to represent him. Bush pleaded not guilty to the information and stood trial before a jury on February 7, 8, and 9, 2006. The jury convicted Bush on all charges, and the court sentenced him to prison for thirty-five years. He

3

appealed his convictions to the DCA, represented by separate appointed counsel,

public defenders Bennett Brummer and Howard Blumberg.  Portions of Bush's

trial had not been transcribed because the court reporter had lost some of her

notes,[2] so counsel sought leave to reconstruct the trial record and prepare a

"statement of the evidence or proceedings" ("Statement") pursuant to Florida Rule

of Appellate Procedure 9.200(b)(4).[3]  With the assistance of Bush's trial attorneys

and the prosecutor, counsel prepared the Statement, which depicted what had

transpired during the portions of the trial that had not been transcribed.  The

Statement was included in the record on appeal.

Although the Statement failed to recreate portions of the trial, the appeal

went forward presenting a single issue:  whether the trial court erred in sustaining

the State's objection to unauthenticated x-rays of Bush's damaged ankle, which

would have helped Bush substantiate his claim that he was incapable of evading

---

[2] The court reporter lost her notes for a portion of the trial proceedings that took place on February 8 and for all of the proceedings on February 9, 2006.

[3] Florida Rule of Appellate Procedure 9.200(b)(4) provides that

if the transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including the party's recollection. . . . Thereafter, the statement and any objections or proposed amendments shall be filed with the lower tribunal for settlement and approval.  As settled and approved, the statement shall be included by the clerk of the lower tribunal in the record.

police in the way the prosecution alleged.[4]  The DCA affirmed summarily.  *Bush v.*

*State*, 992 So. 2d 412 (Fla. 3d Dist. Ct. App. 2008) (mem.).

B.

On September 29, 2009, Bush returned to the trial court and filed a *pro se*

motion for postconviction relief pursuant to Florida Rule of Criminal Procedure

3.850.  His motion presented six claims of ineffective assistance of trial counsel.[5]

Annexed to his motion was the Statement that had been presented to the DCA in

the direct appeal of his convictions.

The trial court appointed Alan Byrd, a private lawyer, to represent Bush and

on August 12, 2010, it held an evidentiary hearing on Bush's motion.  Bush's trial

attorneys, the prosecutor, and Bush testified.[6]  The attorneys' recollection of what

transpired during the portions of the trial that had not been transcribed differed

---

[4] The portion of the trial transcript included in the record on appeal was sufficient to enable the DCA to provide meaningful review of this issue.

[5] His six claims of ineffective assistance were as follows:
(1) Trial counsel failed to contemporaneously object and to renew all objections pursuant to the trial court's denial of the defense's peremptory challenge of a juror.
(2) Trial counsel failed to properly authenticate x-rays in support of the testimony of Bush's expert witness.
(3) Trial counsel failed to allow Bush to testify.
(4) Trial counsel failed to object or move for a mistrial when the prosecutor made statements ridiculing the defense in the presence of the jury.
(5) Trial counsel failed to submit into evidence certain certified medical records.
(6) Trial counsel failed to impeach or attempt to impeach the inconsistent testimony and credibility of one of the state's witnesses.

[6] The State began the hearing by calling Lindsey Glazer, one of Bush's trial attorneys, and Benjamin Simon, the prosecutor.  Byrd followed with the testimony of Gregg Toung, Bush's other trial attorney, and Bush.

5

from that of Bush; they sharply disputed Bush's version of what had occurred.

Byrd thus argued that Bush's motion should be granted because, had a complete

trial transcript been available, he could have thoroughly impeached the attorneys'

testimony and Bush's own would have been bolstered.  The trial court was not

persuaded and denied Bush's Rule 3.850 motion on September 10, 2010.

Bush appealed the decision to the DCA.  In his brief, he raised four issues.

The first three concerned three of the original six ineffective-assistance claims

litigated in the Rule 3.850 proceeding.[7]  Bush's fourth issue was whether the court

erred, under the United States and Florida Constitutions, "in denying [his] Rule

3.850 motion for [postconviction] relief on all claims when 80% of the original

trial record was lost, destroyed, or [ir]retrievable."[8]  Bush claimed that given this

circumstance, the court should have vacated his convictions and ordered a new

trial.

Bush argued that a new trial was required because the missing portions of

the trial transcript precluded him from proving his allegations of ineffective

assistance and thus prevented the trial court from fairly considering and then ruling

on his motion.  He supported his argument by citing a series of Florida appellate

---

[7] The three claims raised on appeal were claims (1), (2), and (6) in Bush's Rule 3.850 motion.  *See supra* note 5.

[8] Bush did not specify how or why the missing transcript resulted in a violation of his United States constitutional rights.  The sole federal authority his brief cited on this point was *Hardy v. United States*, 375 U.S. 277, 84 S. Ct. 424 (1964), which is inapposite.  *See infra* note 9.

6

decisions, all reviewing a defendant's conviction on direct appeal[9]; none reviewed the denial of postconviction relief.  In the most recent decision Bush cited, *Jones v. State*, the Florida Supreme Court expressed its precedent in cases involving the absence of a trial transcript in the direct appeal of a defendant's conviction[10]:  "It is . . . clear that under our precedent, this Court requires that the defendant demonstrate that there is a basis for a claim that the missing transcript would reflect matters which prejudice the defendant."  923 So. 2d 486, 489 (Fla. 2006).

The State, in its answer brief, expressed its argument for the affirmance of the trial court's decision with this perfunctory statement:  "[T]he court's decision denying the Rule 3.850 motion was based on a careful review of the witnesses, and

[9]  *Jones v. State*, 923 So. 2d 486 (Fla. 2006); *Delap v. State*, 350 So. 2d 462 (Fla. 1977) (per curiam); *Vilsaint v. State*, 890 So. 2d 1293 (Fla. 3d Dist. Ct. App. 2005) (mem.); *L.I.B. v. State*, 811 So. 2d 748 (Fla. 2d Dist. Ct. App. 2002); *Blasco v. State*, 680 So. 2d 1052 (Fla. 3d Dist. Ct. App. 1996).  In addition to these decisions, Bush cited Justice Goldberg's statement in *Hardy*, 375 U.S. at 288, 84 S. Ct. at 431 (Goldberg, J., concurring), that:

> the most basic and fundamental tool of [an appellate advocate's] profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law.

The *Hardy* Court was addressing the question of whether under the scheme created in 28 U.S.C. § 1915, which allowed "any federal court [to] authorize an 'appeal' *in forma pauperis*," a court-appointed counsel, who had not represented the indigent defendant at trial, should be provided a complete transcript of the trial proceedings at government expense in order to discharge his professional duty to the defendant, as his appellate counsel, as described in *Ellis v. United States*, 856 U.S. 674, 675, 78 S. Ct. 974, 975 (1958).  *Hardy*, 375 U.S. at 278–82, 84 S. Ct. at 425–28.  In answering the question in the affirmative, the Court did not "reach a consideration of constitutional requirements."  *Id.* at 282, 84 S. Ct. at 428.

[10] The Florida Supreme Court reviewed the defendant's conviction in exercising its "conflict" jurisdiction.  *See* Fla. Const. art. V, § 3(b)(3).

7

circumstances of the case; that the Appellant's issues have already been addressed or are meritless, and alternatively, there was no error."  Referring to *Jones v. State* and two of the other cases Bush had cited,[11] the State's answer brief acknowledged that a new trial might have been required had an inadequate trial transcript precluded the DCA from conducting a meaningful review of his convictions.  It went on to assert, however, that "to the extent that the adequacy of the record was or could have been raised on direct appeal, [Bush] was not entitled to relief."  In making its argument, the State did not distinguish between the provision of a trial transcript on direct appeal and in a postconviction proceeding.  The State thus raised, but did not answer, the question of whether the *Jones* remedy applied in the postconviction context as well as on direct appeal and, if so, whether the transcript of Bush's trial was inadequate for Rule 3.850 purposes—*i.e.*, to determine whether defense counsels' trial performance was constitutionally ineffective under *Strickland v. Washington*.  It was precisely this unanswered question that Bush's fourth point posed:  whether the Florida appellate decisions Bush cited required the denial of Rule 3.850 relief to be reversed and a new trial granted.

The DCA summarily affirmed the trial court's decision.  *Bush v. State*, No. 3D10-3063, 2012 WL 560916 (Fla. 3d Dist. Ct. App. Feb. 22, 2012) (unpublished table decision).

---

[11] *Delap*, 350 So. 2d 462; *L.I.B.*, 811 So. 2d 748.

8

C.

Having exhausted his state-court remedies, Bush brought the habeas petition now before us.  In his petition, Bush challenged the DCA's disposition of the three ineffective-assistance claims presented on appeal and of his claim that the unavailability of eighty percent of the trial transcript required the vacation of his convictions and a new trial.  Bush reframed that claim, which is the only claim relevant here, to assert two violations of the United States Constitution:  His convictions were invalid because "his Fifth and Fourteenth Amendment rights to due process and access to the courts were violated by being required to appeal and seek postconviction remedies with an incomplete record."[12]  As stated, the claim amounted to a substantive restatement of the fourth claim Bush presented to the DCA in appealing the denial of Rule 3.850 relief.

The District Court ordered the state to respond to the petition.  Concerning Bush's fourth claim, the State's response first asserted that the claim had been waived.  Bush, the State contended, should have raised on direct appeal his allegations about the effect of the incomplete transcript on meaningful appellate review.  The State then argued that, should the merits be reached, Bush could not

---

[12] The District Court expressed the claim in these quoted words in its order denying Bush's petition.  As stated in Bush's petition and by the Magistrate Judge in his report and recommendation to the District Court, the claim was this:  "The petitioner has a constitutional right under the Fifth Amendment and Fourteenth Amendments to the guarantee of due process and fundamental right to access the courts through a complete record on appeal which is indispensable to the realization of this constitutional right."

show that he was actually prejudiced by the missing portions of the transcript. Implicit in this argument was the State's recognition that a convicted defendant has a constitutional right to the provision of a trial transcript for use in postconviction proceedings. It recognized the right as created by the substantive component of the Due Process Clause. It also recognized that denial of a transcript might operate to deny the defendant's right of access to the courts. In short, the State's argument was not that there is no constitutional right to a trial transcript in postconviction proceedings. Rather, its argument was that notwithstanding the missing portions of the transcript, Bush received full consideration of his ineffective-assistance claims in the Rule 3.850 proceeding.

The District Court referred Bush's petition and the State's response to a Magistrate Judge for a report and recommendation. The Magistrate Judge denied Bush's request for an evidentiary hearing and, after consulting the records of the state courts' criminal and Rule 3.850 proceedings, recommended that the District Court deny his petition. In his recommendation, the Magistrate Judge "decline[d] to engage in an analysis of procedural bar" resulting from Bush's failure to present his insufficient-record argument as two, discrete federal constitutional claims in his Rule 3.850 motion and instead reached the merits. Citing *Mayer v. City of Chicago*, 404 U.S. 189, 92 S. Ct. 410 (1971), a case about an indigent defendant

10

being denied a free transcript in appealing his conviction,[13] the Magistrate Judge

stated that the United States Supreme Court "has recognized that substantive due

process," as distinguished from procedural due process, "includes access to the

courts and also a criminal defendant's right to obtain a trial transcript for purposes

of appeal."  He held, however, that Bush failed to "allege[] deficiencies in the trial

transcript substantial enough to call into question the validity of the appellate

process in the state courts."[14]

The District Court agreed.  It too assumed that the State's failure to provide

a defendant with a complete transcript of his trial for use in a postconviction

proceeding could constitute a denial of substantive due process,[15] but only if the

defendant established prejudice.  Bush, the District Court concluded, failed to

---

[13] *Mayer* involved an Illinois Supreme Court's denial of a transcript to an indigent who had been convicted of violating Chicago ordinances.  404 U.S. at 190–93, 92 S. Ct. at 412–14. Applying the principle it announced in *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585 (1956)—that the "constitutional guarantees of due process and equal protection" require the provision of trial transcripts sufficiently complete to permit proper consideration of an *indigent's direct appeal* of his conviction—the United States Supreme Court vacated the Illinois Supreme Court's order denying the transcript.  *Mayer*, 404 U.S. at 199, 92 S. Ct. at 417.  Nothing in *Mayer* or any other United States Supreme Court decision we are aware of extends this equal protection right to a case in which the State has not discriminated against the defendant on account of his indigent status.

[14] We note that the quoted part of these statements did not distinguish between the direct appeal of a conviction and the appeal of an adverse postconviction decision.

[15] The District Court noted that "[i]n Ground Four [of his petition, Bush] argues that his Fifth and Fourteenth Amendment rights to due process and access to the courts were violated by being required to appeal and seek post-conviction remedies with an incomplete record."  In adopting the Magistrate Judge's recommendation, however, the Court did not explicitly address the question of whether the Due Process Clause incorporated a right to access the courts.

11

present any evidence that the missing portions of his transcript prejudiced his ability to prosecute his Rule 3.850 motion.

Bush sought a COA on the four claims he asserted in his habeas petition. The District Court denied the COA, but this Court granted a COA with respect to his fourth claim, framing the issue as "[w]hether the absence of significant portions of the trial transcript violated Bush's rights to due process or access to the courts." The COA was granted under the assumption that Bush had presented the due process and access to the courts claims to the DCA and that it had summarily decided that neither constitutional right had been infringed.

## II.

### A.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, circumscribes a federal court's authority to grant a writ of habeas corpus setting aside a state-court conviction. The relevant portion states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Bush does not contend that the DCA's affirmance of the Rule 3.850 court's decision was based on an unreasonable determination of facts. Rather, his argument is that the decision was contrary to, or an unreasonable application of, clearly established Federal Law, and that the District Court erred in failing to recognize that.

Under § 2254(d)(1), "clearly established Federal Law, as determined by the Supreme Court of the United States," refers to the Court's holdings, not its dicta, as of the time of the state-court decision in question.  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000).  A state-court decision is "contrary to" a Supreme Court holding "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Id.* at 412–13, 120 S. Ct. at 1523.

## B.

Bush sought a COA, and this court granted it, on issues of access to the courts and due process.  In his opening brief on appeal, though, Bush says nothing

13

about access to the courts.  He has therefore abandoned the claim.[16]  *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004).  As to due process, the parties, the Magistrate Judge, and the District Court treated Bush's petition as claiming a violation of the right in its substantive rather than procedural form.  And Bush and the State continue to do so here.  We do likewise.  Our analysis starts with the function of a trial transcript on direct appeal versus in postconviction proceedings.

The state creates a trial transcript for purposes of direct appeal out of necessity.  That is, the state provides direct appellate review of convictions, so it also provides a court reporter and transcript in order to allow for review to be meaningful.  A trial transcript, in some instances, might be critical to reviewing for alleged trial-court errors; affirming a conviction without one might be arbitrary.  Thus if a defendant's conviction cannot be meaningfully reviewed on direct appeal, due to a deficient transcript or otherwise, state law requires the conviction

---

[16] Regardless of abandonment, Bush's access to the courts claim is not persuasive. Access to the courts claims generally assert a right to something that the state could provide, or they involve state interference with individuals' ability to challenge their convictions. *See, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498 (1977) ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *Johnson v. Avery*, 393 U.S. 483, 89 S. Ct. 747 (1969) (holding that, unless alternative sources of assistance are provided, prisoners must be allowed access to inmate "writ-writers"); *Ex Parte Hull*, 312 U.S. 546, 61 S. Ct. 640 (1941) (holding that the state could not refuse to mail a prisoner's inartful pleadings to the courts).  Here, portions of Bush's trial transcript were lost through no fault of the State, and the State had no power to conjure the missing portions.

to be vacated.  *See, e.g.*, *Vilsaint v. State*, 890 So. 2d 1293 (Fla. 3d Dist. Ct. App. 2005) (mem.).  And indeed the United States Constitution does too, as such would violate one's right to procedural due process.  *See Entsminger v. Iowa*, 386 U.S. 748, 750, 87 S. Ct. 1402, 1403 (1967) (holding that a defendant was denied "adequate and effective review" of his conviction because significant parts of the trial record were missing).  In Bush's direct appeal of his convictions, he did not have a complete trial transcript, but that did not preclude meaningful review.  Bush concedes this.[17]

A trial transcript plays a different role in Rule 3.850 proceedings.  Once a Rule 3.850 motion is filed, the clerk must "forward the motion and file to the court."  Fla. R. Crim. P. 3.850(f).  If the motion states a claim for relief "but the files and records in the case conclusively show that the defendant is not entitled to relief," the claim "shall be summarily denied on the merits without a hearing."  *Id.* at 3.850(f)(4), (5).  If the files and records—including among their contents the trial transcript—do not conclusively show that the defendant is not entitled to relief, as here, then the court must order the state attorney to file an answer to the defendant's motion.  *Id.* at 3.850(f)(6).  After Bush filed his motion and the State filed its response, the Rule 3.850 court decided an evidentiary hearing was

---

[17] Bush has never contended, and does not contend here, that the missing trial transcript caused him any prejudice in advocating the single claim of trial-court error he presented to the DCA in appealing his convictions.

required. *See id.* at 3.850(f)(8). It was only at this point that Bush needed the trial transcript. The full transcript was unavailable but the hearing proceeded nonetheless.

In this context, the transcript was merely to serve as a piece of evidence in Bush's Rule 3.850 proceeding. Bush's constitutional claim is that, without a transcript in his Rule 3.850 hearing, he could neither impeach the other witnesses' testimony nor show that his memory of the events at trial was, in fact, better than that of the other witnesses. Bush contends that this hindered his ability to argue his ineffective-assistance claims. The transcript, then, was to be used to increase or decrease the value of witness testimony, like any other piece of evidence. This evidentiary role is different in kind than the role a trial transcript plays on direct appeal, where it is potentially indispensable for identifying trial-court errors and conducting meaningful appellate review.

Holding the Rule 3.850 proceeding despite the missing evidence (the transcript) is not a procedural due process violation. "Procedural due process requires only an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Cherry v. Heckler*, 760 F.2d 1186, 1190 (11th Cir. 1985) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)). Bush was represented by counsel in his Rule 3.850 proceeding, testified about his own recollection of trial, called Toung as a witness and had an opportunity to cross-

16

examine Glazer and Simon, and had the right to appeal.  He also had available to him the record which he and his trial counsel had previously supplemented with a statement of proceedings via Florida Rule of Appellate Procedure 9.200(b)(4). What's more, the transcript's incompleteness is in no way a result of trial-court error, and the full transcript would not aid in identifying trial-court errors.  So, necessarily, Bush contends that he has a substantive due process right to the full transcript.

We know of no United States Supreme Court case that confers a substantive due process right of the sort Bush claims.  Substantive due process rights are "fundamental" rights; no amount of process can justify their infringement. *McKinney v. Pate*, 20 F.3d 1550, 1556–57 (11th Cir. 1994) (en banc).  None of the decisions Bush, the State, the Magistrate Judge, or the District Court cite stand for the proposition that Bush had a substantive due process right to a transcript of portions of his trial that were critical to prosecuting his *Strickland* claims postconviction.  Rather, they hold that affirming a conviction on direct appeal notwithstanding the absence of portions of the trial transcript essential to meaningful appellate review of trial-judge error could deny the defendant procedural due process of law.  *See, e.g.*, *Mayer*, 404 U.S. at 193–96, 92 S. Ct. at 414–15; *Draper v. Washington*, 372 U.S. 487, 495–98, 83 S. Ct. 774, 779–80 (1963); *Griffin v. Illinois*, 351 U.S. 12, 15, 76 S. Ct. 585, 589 (1956).  Further, the

17

*Griffin* line of cases—Bush's main authority—are grounded primarily in equal protection principles, standing for the proposition that "a State cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons." *See Ross v. Moffitt*, 417 U.S. 600, 608, 94 S. Ct. 2437, 2442 (1974) (characterizing the *Griffin* line of cases as standing for the quoted proposition). And beyond lacking case law, the parties, the Magistrate Judge, and the District Court also do not explain why, or how, having access to a complete trial transcript is a "fundamental" right.

As discussed, a trial transcript functions to ensure *procedural* due process on direct appeal. There may be instances in which a trial transcript is crucial to meaningful appellate review. But there may also be instances in which meaningful review can be conducted without a trial transcript. Adequate process can remedy a missing or deficient trial transcript. Florida Rule of Appellate Procedure 9.200(b)(4), for example, provides litigants a way to receive a fair hearing without a trial transcript.

In Rule 3.850 proceedings, trial transcripts are but one part of the record that informs a state postconviction court's decision of whether to conduct an evidentiary hearing. Here, Bush was granted an evidentiary hearing. Within that hearing, the trial transcript's function was then an evidentiary one: to substantiate Bush's testimony and impeach adverse testimony. Being unable to use a portion of

18

the trial transcript was akin to being unable to produce a witness.  Bush's claim

therefore cannot be feasibly characterized as a *substantive* due process violation.

### III.

The DCA's affirmance of the Rule 3.850 court's denial of relief was not

contrary to, and did not involve an unreasonable application of, clearly established

United States Supreme Court precedent.  We therefore affirm the District Court's

dismissal of Bush's 28 U.S.C. § 2254 petition.

**SO ORDERED.**